**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Anthony VINCENT, Defendant-Appellant.**

No. 81–1475.

United States Court of Appeals, Sixth Circuit.

Argued May 24, 1982.

Decided June 23, 1982.

William L. Woodard, Kenneth R. Sasse, Detroit, Mich., for plaintiff-appellee.

Richard A. Rossman, U. S. Atty., Thomas W. Cranmer, Patricia G. Reeves, Asst. U. S. Attys., Detroit, Mich., for plaintiff-appellee.

Before BROWN and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

James Anthony Vincent appeals his conviction on two counts of assaulting a federal officer, in violation of 18 U.S.C. §§ 111 and 114, and one count of threatening the President, in violation of 18 U.S.C. § 871(a).

On March 30, 1981, the day President Reagan was shot in Washington, an anonymous caller informed a Michigan Bell Telephone operator that another attempt would be made on the President's life. The call was traced to the Linden, Michigan residence of Anthony Hnilica. Secret Service Agents Craig Spraggins and Henry Hummert were dispatched to investigate. When the agents arrived at the Hnilica home, Hnilica's grandson, the defendant Vincent, met them in the yard. After a heated verbal exchange, Vincent struggled with the officers, seriously injuring Agent Spraggins. In the course of this confrontation, Vincent allegedly made several verbal threats to kill the President. Vincent was arrested and taken, unsubdued, to the Ypsilanti Psychiatric Hospital, where he was denied admission.

On April 13, 1981, a federal grand jury returned an indictment charging Vincent with the offenses described above. The count of threatening the President was predicated, not on the telephone call, which another family member admitted making,

but on the alleged verbal threats uttered during the interchange with the Secret Service agents.

Vincent was tried in June, 1981. The jury returned verdicts of guilty on all three counts of the indictment. The District Judge imposed concurrent sentences of three years for assaulting the federal agents, and five years for threatening the President.

On appeal, Vincent raises a number of issues. His strongest arguments are: (1) that the trial judge should have directed a verdict of acquittal on the count of threatening the President; and (2) that the District Court committed reversible error in admitting evidence of Vincent's post-arrest conduct. We address these contentions in order.

■ 18 U.S.C. § 871 provides in pertinent part:

> Whoever knowingly and willfully deposits for conveyance in the mail ... any letter, paper ... or document containing any threat to take the life of or to inflict bodily harm upon the President of the United States, ... *or knowingly and willfully otherwise makes any such threat against the President*, .... shall be fined not more than $1,000 or imprisoned not more than five years, or both. (emphasis added)

This circuit has adopted an "objective" construction of section 871. A defendant may be convicted under this statute even if he does not harbor an actual, subjective intent to carry out his threat. In *United States v. Lincoln*, 462 F.2d 1368, 1369 (6th Cir. 1972), we adopted the rule of the Ninth Circuit, set out in *Roy v. United States*, 416 F.2d 874, 877 (9th Cir. 1969):

> This Court therefore construes the willfulness requirement of the statute to require only that the defendant intentionally make a statement, written or oral, *in a*

> *context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of the President*, and that the statement not be the result of mistake, duress, or coercion. The statute does not require that the defendant actually intend to carry out the threat. [Footnotes omitted.] (emphasis added) [1]

■ In this case, there was sufficient evidence to support a jury verdict of "guilty." Vincent addressed his threats against the President to two Secret Service agents who were in the process of investigating a threatening call placed from the residence where they encountered Vincent. These events occurred a few hours after the President had actually been shot and critically injured. Under these circumstances, a jury could find that a reasonable person would have taken Vincent's statements seriously. The present matter is thus readily distinguishable on its facts from *United States v. Frederickson*, 601 F.2d 1358 (8th Cir. 1979), relied on by the defendant.

We turn now to consider the admission of evidence relating to Vincent's post-arrest conduct. That conduct included the making of threatening statements against the President in the presence of witnesses at the Ypsilanti Hospital. Vincent was not, of course, indicted for these later threats; the section 871 count of the indictment was limited to the threats he allegedly made to Secret Service agents at the Hnilica residence.

■ According to Vincent, admission of this "other acts" evidence contravened Rule 404(b), Federal Rules of Evidence, which provides:

---

1. We note that this test would be anomalous in cases of irrational or paranoiac auditors: a reasonable person could foresee that an irrational auditor would take even the most frivolous "threat" seriously.

Perhaps the test would better be stated in purely objective terms, as, for example, "whether a reasonable person, in the circumstances of the statement, would interpret it as a serious expression of an intent to harm or kill the President."

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In reviewing the admission of evidence challenged under Rule 404(b), we must make two determinations. First, we must decide whether Vincent's post-arrest conduct was admissible for any *proper* purpose, as distinct from the *improper* purpose of showing "character" or "propensity." *United States v. Cooper*, 577 F.2d 1079, 1088 (6th Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). If we conclude that there was a proper basis for admission, we must then consider whether the probative value of the evidence outweighed its potential prejudicial effects. *See* advisory committee note to Subdivision (b); *United States v. Ring*, 513 F.2d 1001 (6th Cir. 1975). In the second instance, the standard of review on appeal is whether the trial judge abused his discretion in admitting the evidence. *United States v. Czarnicki*, 552 F.2d 698 (6th Cir.), *cert. denied*, 431 U.S. 939, 97 S.Ct. 2652, 53 L.Ed.2d 257 (1977).

■ We have considered the Rule 404(b) issue carefully and conclude, first, that evidence of Vincent's post-arrest conduct was properly admissible on a *res gestae* theory. Vincent's post-arrest statements were "evidence of other crimes, closely related in both time and nature to the crime charged," which establish "the common scheme or history of the crime, of which the other crimes constitute a part." *United States v. McDaniel*, 574 F.2d 1224, 1227 (5th Cir. 1978). As this court observed in *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977): "The jury is entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void—without knowledge of the time, place and circumstances of the acts which form the basis of the charge." *See also United States v. Masters*, 622 F.2d 83 (4th Cir. 1980); *Carter v. United States*, 549 F.2d 77 (8th Cir. 1977); *Unit-*

*ed States v. Blewitt*, 538 F.2d 1099 (5th Cir. 1976). Normally, of course, we think of "other acts" which are part of the *res gestae* as acts committed *before* the crime charged. Occasionally, however, evidence of subsequent acts is admitted for this purpose. *See United States v. Contreras*, 602 F.2d 1237, 1240 (5th Cir. 1979).

The trial judge, in the exercise of his discretion, apparently felt that the probative value of the challenged evidence outweighed the danger that it would result in unfair prejudice to the defendant. Although, in a trial de novo, we might have reached a different conclusion, we decline to hold on appeal that this decision was an abuse of discretion. In this particular area, the case law overwhelmingly characterizes the trial judge's discretion as "very broad." *See, e.g., United States v. Czarnicki, supra; United States v. McPartlin*, 595 F.2d 1321 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979); *United States v. Long*, 574 F.2d 761 (3d Cir.), *cert. denied*, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978).

■ Finally, Vincent points out that the District Judge did not give the jury the preferred instruction limiting the permissible use of the post-arrest evidence. The record reveals, however, that defense counsel did not request such an instruction. Thus, under *United States v. Cooper, supra*, 577 F.2d at 1088, the trial judge's failure to give a limiting instruction did not constitute "plain error." In any event, the District Judge was careful to admonish the jury that it could not convict Vincent of the section 871 count if it found that he had not threatened the President until after his arrest. In light of Vincent's failure to request a special instruction, we deem that warning sufficient.

Judgment affirmed.